# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SUSAN R. PARKS, wife and next of kin of Timothy Glen Parks, deceased, and Executor of the Estate of Timothy Glen Parks, deceased.<br><br>        Plaintiff,<br>vs.<br><br>ARIENS COMPANY, a Wisconsin Corporation,<br><br>        Defendant. | No. C14-4005-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

_____

## TABLE OF CONTENTS

*I.   INTRODUCTION AND BACKGROUND ............................................... 2*
   *A.   Factual Background ............................................................ 2*
   *B.   Procedural Background ....................................................... 7*
*II.   LEGAL ANALYSIS ........................................................................ 8*
   *A.   Standards For Summary Judgment ........................................ 8*
   *B.   Strict Liability Claims ....................................................... 11*
   *C.   Negligence claims ............................................................ 12*
       *1.   Failure to retrofit ..................................................... 12*
       *2.   Failure to provide ROPS as standard equipment ............... 13*
*III.   CONCLUSION .......................................................................... 16*

Timothy Parks was killed when his Gravely Promaster 152Z zero turn radius lawn mower rolled over on top of him as he was mowing his acreage. He is survived by his wife, Susan Parks. She has brought suit for wrongful death on theories of strict liability and negligence. In this diversity action under Iowa products liability law, I am asked to determine whether Susan is entitled to present to a jury both her strict liability and negligence claims. These questions, and others, are presented by defendant's motion for summary judgment.

## I. INTRODUCTION AND BACKGROUND

### A. *Factual Background*

I set out only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning Ariens's motion for summary judgment and resistance to it. At least for the purposes of summary judgment, the facts recited here are undisputed. I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

On June 3, 2013, Timothy Glen Parks ("Tim") was killed in an accident while operating a Gravely Promaster 152Z zero turn radius lawn mower ("the 152Z mower"). Tim died when the 152Z mower rolled upside down in a ditch onto him. Tim was married to Susan Parks. Tim and Susan were married in 1976. At the time of the accident, Tim lived at 26312 Highway 12, Westfield, Iowa. Tim had lived there since 1996. The Parks' residence was a large acreage with, *inter alia*, 12 fruit trees.[1] The 12 fruit trees

---

[1]The parties disagree about the size of the Parks' acreage with Ariens contending that it was approximately 37.8 acres and Susan contending that it was approximately 53

are spread out over about 10 acres, but there is no orchard on the acreage. Tim was the person primarily responsible for mowing his acreage. Tim used the 152Z mower to cut the grass on his acreage from 2006 until 2012. Tim only used the 152Z mower for cutting grass. It took Tim four to five 8 hour days to mow the entire acreage. In the summer, Tim would use the 152Z mower two to three hours each morning to cut the lawn. He was responsible for maintaining the 152Z mower. Tim was an experienced and skilled user of tractors with mower attachments.

At the time of the accident, Tim was driving the 152Z mower in a northerly direction on the west side of his driveway mowing a 24 inch strip of grass between the gravel driveway and the edge of a ditch. At the bottom of the ditch is a culvert. The mowing path along the shoulder and south of the culvert is approximately five feet wide. Chief Nielsen of the Plymouth County Sheriff's Department took photographs of the accident scene on the day of the accident. The photographs taken by Chief Nielsen show, at the time of the accident, tall grass around the culvert in the ditch.

The 152Z mower was manufactured by Ariens in March, 2005. At the time the 152Z mower was manufactured, Ariens sold the 152Z mower throughout the United States and Canada through a network of dealers located in 48 states. Robertson Implement Company ("Robertson Implement") in South Sioux City, Nebraska, is an authorized Ariens and Gravely dealer. Robertson Implement receives marketing material from Gravely with regard to their lawn mowers. Ariens sold the 152Z mower to Robertson Implement for retail resale. Ariens did not equip it with a Rollover Protection System ("ROPS"). A ROPS for a lawn mower like the 152Z mower consists of a roll bar and

---

acres. The precise size of the Parks's acreage is immaterial and irrelevant for the purposes of Ariens's motion for summary judgment.

seat belt. Ariens made a ROPS available as an option for its 152Z mower model in 2002. Ariens knew that its model 152Z mowers would be operated on slopes.

When Robertson Implement Company ordered the 152Z mower, it could have ordered it with a ROPS, but it did not do so. Rick Robertson, the owner of Robertson Implement, did not order ROPS because that was a choice he left to the customer. ROPS was an option for the 152Z mower that the customer could either choose or not choose. The first retail purchaser of the 152Z mower was Colby Camerer of Camerer Lawn Service. Camerer purchased the 152Z mower on June 21, 2005. When Camerer purchased the 152Z mower, he and Robertson discussed rollover protection as an option. Robertson told Camerer that ROPS was available as an option, but Camerer declined. Camerer explained that he felt comfortable without it and did not take on any work that he would be concerned about doing without ROPS on the 152Z mower. Camerer traded in the 152Z mower when he purchased a new Gravely 252M mower from Robertson Implement in May 2006. The 152Z mower did not have a ROPS when Camerer traded it in. Tim bought the 152Z mower previously owned by Camerer from Robertson Implement on June 5, 2006, nearly seven years before the accident. Rick Robertson was the person who sold Tim the 152Z mower. When Tim bought the 152Z mower, he and Robertson discussed the handling of the 152Z mower and the terrain on which Tim would be operating.

Gravely 152Z mowers were manufactured primarily for commercial use, but were available for sale to noncommercial users. The 152Z mower complied with all laws and regulations when it was manufactured. At the time the 152Z mower was manufactured

and at the time Tim purchased it, a ROPS was available for the 152Z mower.[2] At the time Tim purchased it, Ariens offered a foldable ROPS for the 152Z mower. A foldable ROPS is designed with hinges to allow the ROPS to fold beneath the shoulders of the operator in order to fit into low clearance areas such as under low tree limbs. It is frequently designed to fold beneath the shoulder level of the average operator. In some models, it even folds beneath the height of the back of the operator's seat.

Ariens and its dealers offered ROPS as an option to all purchasers of 152Z mowers. By offering ROPS as an option, Ariens and its dealers allowed each retail purchaser of a 152Z mower to decide whether a ROPS would be appropriate or desirable for the purchaser's intended use of the mower and the environment where it would be used. Tim understood what a roll bar was at the time he bought the 152Z mower.

At the time that Tim bought the 152Z mower, it was Robertson's standard practice to discuss the availability and safety features of a ROPS with each of his customers and to offer to sell a ROPS to the customer. Although Robertson cannot recall specifically whether he had such a conversation with Tim, he had no reason to believe he deviated from his standard practice in his sale of the 152Z mower to Tim. It was also Robertson's standard practice to go over an "Equipment Safety Check" form with each customer and have the customer sign it.[3] The Equipment Safety Check form was provided to Robertson

---

[2]The parties disagree whether the ROPS roll bar that was available for the 152Z mower at the time of its manufacture in 2005 was fixed in height and could not be adjusted. The parties further disagree whether the available ROPS roll bar for the 152Z mower would have required its removal in order for Tim to do the low clearance work around the 12 fruit trees on his acreage.

[3]Robertson does not have an Equipment Safety Check form signed by Tim. Robertson explained that Equipment Safety Check forms for the time period of Tim's purchase of the 152Z mower were thrown out in 2010 or 2011.

Implement by its insurance company and Robertson believed that his insurance company required him to use it. Robertson cannot recall specifically whether he had a conversation with Tim about the topics listed on the Equipment Safety Check form. Item No. 10 on the Equipment Safety Check form asks, "Rollover protection system in place?" Defendant's App. at 113. Item number 11 on the Equipment Safety Check form asks whether, "Rollover protection system rejected by customer?" [4] Defendant's App. at 113.

Patrick Parks is one of Tim's sons. After Tim purchased the 152Z mower, Patrick tried it out. Before allowing Patrick to operate the 152Z mower, Tim spent over an hour going over the owner's manual with Patrick. The owner's manual contains 280 warnings. The owner's manual contains the following warning about operating the 152Z mower on slopes:

> Slopes are a major factor related to loss-of-control and tip-over accidents. Operation on all slopes requires extra caution.

152Z owner's manual at GB-5, Defendant's App. at 25. Page GB-7 of the owner's manual contains the following warning:

> DO NOT operate near drop off, ditches or embankments. Unit can suddenly turn over if wheel is over the edge of the cliff or ditch, or if an edge caves in.

---

[4]The portion of Ariens's brief discussing the Equipment Safety Check form is misleading at best. Ariens's brief states that "When Mr. Robertson and Mr. Parks went over the Equipment Safety Check, item 10 was marked 'No' and Item number 11 was marked 'Yes'". Defendant's Br. at 6-7. These statements lead the reader to incorrectly believe that Ariens has the Equipment Safety Check form that Tim and Robertson filled out when Tim purchased the 152Z mower. Only after reading these misleading statements does one learn, in a footnote, that Ariens does not have a Safety Equipment Check form signed by Tim. Defendant's Br. at 7 n.1. Hopefully, the misleading nature of these statements was merely the unintentional consequence of carelessness rather than by design.

152Z owner's manual at GB-7, Defendant's App. at 27. In addition, the 152Z owner's manual contains the following recommendation regarding the use of ROPS:

> Use of a Rollover Protection System (ROPS) is recommended for slope operation. See Attachments and Accessories.

152Z owner's manual at GB-8, Defendant's App. at 28.

Ariens's sales and marketing executive at the time the 152Z mower was manufactured and marketed was Mike Theucks. Ariens did no marketing study of how ROPS would sell as an option or what affect ROPS would have on mower sales if it was made standard equipment. Ariens's marketing department did not inquire how ROPS were selling as optional equipment. As of August 2014, Ariens had sold 28,188 100 series mowers and 540 of these buyers exercised the option to purchase ROPS.

Susan's expert witness, Professor Dale Griffin, examined the 2004 and 2006 sales brochure/catalog for the Gravely ZTR Promaster line of mowers. Professor Griffin is of the opinion that Gravely mowers were "marketed for their speed, ease of use and convenience, all contributing to efficiency in the sense that a quicker turning yields a quicker cut which yields clear bottom-line benefits." Plaintiff's App. at 121.

### B. *Procedural Background*

On January 16, 2014, Susan filed her Complaint against Ariens, the designer, manufacturer, and distributor of the 152Z mower.[5] Susan alleges claims of strict liability and negligence. Susan's claims all stem from Tim's death while operating the 152Z mower. Susan alleges that the 152Z mower was not crashworthy in the event of a rollover because it lacked ROPS as standard equipment and adequate warnings of the need for a

---

[5]Susan also named Gravely Company in her Complaint. She subsequently dismissed her claims against it.

ROPS.  The parties are before me by virtue of diversity of citizenship.  *See* 28 U.S.C. § 1332.

Ariens has filed a motion for summary judgment.  In its motion, Ariens argues that Susan's strict liability claims are not cognizable under Iowa law.  Ariens also asserts that it had no duty under Iowa law to "retrofit" Tim's 152Z mower with a ROPS, and that it satisfied any duty it may have had by offering ROPS as an optional feature. Finally, Ariens argues that it is entitled to summary judgment on Susan's failure to warn claim because it had no duty to provide adequate warnings and there is no evidence establishing that the absence of warnings caused Tim's injuries.  Susan filed a timely resistance to Ariens's motion for summary judgment.  Susan argues that each of her claims are cognizable under Iowa law; that genuine issues of material fact preclude summary judgment on her design defect claims; that Ariens's "optional equipment defense" has never been adopted in Iowa and, in any event, is inapplicable to her case; and that genuine issues of material fact preclude summary judgment on her failure to warn claim.  Ariens, in turn, filed a timely reply brief in support of its motion.  On June 29, 2015, Susan filed notice that she was abandoning her failure to warn claim under either strict liability or negligence.

## II.  LEGAL ANALYSIS

### A.  *Standards For Summary Judgment*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or

defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has

9

successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute.

*See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006). Consequently, I turn to consider the parties' arguments for and against summary judgment.

### B. Strict Liability Claims

As noted above, Ariens challenges the viability of Susan's strict liability claims. Ariens asserts that Susan's strict liability claims must be dismissed because Iowa does not recognize strict liability as a theory of recovery in products liability cases. Iowa law recognizes three types of product defects—manufacturing, design, and warning. *See* THIRD PRODUCTS RESTATEMENT § 2 (adopted by the Iowa Supreme Court in *Wright v. Brooke Group Ltd.*, 652 N.W.2d 159 (Iowa 2002)). Susan's strict liability claims are that the 152Z mower suffers from both design and warning defects. *See* Compl. At ¶¶ 31 and 32. Under Iowa law, however, "[f]ailure to warn claims cannot be brought under a theory of strict liability." *Scott v. Dutton–Lainson Co.*, 774 N.W.2d 501, 504 (Iowa 2009) (internal citation omitted); *see Mercer v. Pittway Corp.*, 616 N.W.2d 602, 623 (Iowa 2000) (holding that under Iowa law "[a] claim alleging a manufacturer failed to warn of the dangers involved in using a product is properly based on a theory of negligence, not strict liability."); *Olson v. Prosoco*, Inc., 522 N.W.2d 284, 289 (Iowa 1994) ("We believe that the correct submission of instructions regarding a failure to warn claim for damages is under a theory of negligence and the claim should not be submitted as a theory of strict liability."). Similarly, the Iowa Supreme Court has instructed that "[t]he Third Products Restatement recognizes that 'strict liability is appropriate in manufacturing defect cases, but negligence principles are more suitable for . . . [design defect cases.'" *Scott*, 774 N.W.2d at 504 (quoting *Wright*, 652 N.W.2d at 168); *see Huck v. Wyeth, Inc.*, No. 12–0596, 850 N.W.2d 353, 383, 2014 WL 3377071, at *26

11

(Iowa July 11, 2014) ("[T]he Restatement (Third) of Torts: Products Liability had, in addressing claims of design defect, abandoned the consumer-expectations test traditionally employed in strict liability analyses in favor of a risk-utility test typically found in negligence analyses." (internal citation omitted)). Therefore, Ariens's motion for summary judgment on Susan's strict liability claims is granted.

### C. Negligence claims

#### 1. Failure to retrofit

Ariens also seeks summary judgment on Susan's claim that Ariens breached their duty to retrofit the 152Z mower with a ROPS. Ariens contends that no such duty exists under Iowa law. Susan concedes that there is no duty to retrofit a product under Iowa law. The parties are correct. There is no independent duty to retrofit under Iowa law. *See Lovick v. Wil–Rich,* 588 N.W.2d 688, 693–94 (Iowa 1999); *Burke v. Deere & Co.*, 6 F.3d 497, 509–10 (8th Cir. 1993) (holding that under Iowa law, there is no independent duty on the part of a product's manufacturer to retrofit).[6] Since no duty to retrofit exists, Susan's claim for breach of this duty fails as a matter of law. Therefore, Ariens's motion for summary judgment on Susan's retrofit claim is also granted.

---

[6]Iowa's position on this issue is hardly unique. Many other jurisdictions have refused to impose a duty on manufacturers to retrofit a defective product. *See McDaniel v. Bieffe USA, Inc.*, 35 F. Supp.2d 735, 743 (D. Minn. 1999) (concluding that no such duty exists under Minnesota law); *Wallace v. Dorsey Trailers Southeast, Inc.*, 849 F.2d 341, 344 (8th Cir. 1988) (affirming district court's conclusion that Missouri does not recognize a duty to retrofit); *see also Tabieros v. Clark Equip. Co.*, 944 P.2d 1279, 1298–1300 (Haw. 1997) (citing cases and stating that "virtually every court that has confronted the issue head-on" has rejected this duty); *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 333 (Mich. 1995) (holding there is no continuing duty under Michigan law to repair or recall).

### 2. *Failure to provide ROPS as standard equipment*

Ariens also contends that any duty it had to equip the 152Z mower with ROPS as standard equipment was fulfilled when Tim was made aware ROPS was available as an option on the 152Z mower when he bought it. In support of its argument, Ariens relies on the New York appellate court's decision in *Biss v. Tenneco, Inc.*, 409 N.Y.S.2d 874 (N.Y. App. Div. 1978), and its progeny. In *Biss*, the plaintiff's decedent was fatally injured while operating a loader at work. The plaintiff sued the loader's manufacturer, claiming it was defectively designed because it lacked a ROPS. *Id*. at 875. It was undisputed that the ROPS was available for purchase when the decedent's employer bought the loader. *Id.* at 876. The trial court dismissed the complaint at the conclusion of plaintiff's case. The appellate court affirmed, holding that the loader's manufacturer "fulfilled [its] duty to exercise reasonable skill and care in designing the product as a matter of law when [it] advised the purchaser that an appropriate safety structure for the loader was available." *Id*. (emphasis added). The court's reasoning was that since the loader was stable when operated properly, any danger of injury from a roll over depended on the characteristics of the work site and the particular job being performed by the operator, the duty to exercise reasonable care in selecting the appropriate safety options for the loader rested with its buyer. *Id*. at 877. Thus, the court conclude that the loader's manufacturer could not be held liable for failing to provide a ROPS as standard equipment. *Id*. As the court observed:

> If knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him. He is the party in the best position to exercise an intelligent judgment to make the trade-off between cost and function, and it is he who should bear the responsibility if the decision on optional safety equipment presents an unreasonable risk to users.

*Id.* at 876-77.

I find *Biss's* reasoning persuasive as applied here. I note that while the Iowa Supreme Court has not addressed *Biss's* reasoning, other courts have adopted it in deciding similar cases where ROPS was an option offered on a manufacturer's tractors and forklifts. *See, e.g.*, *Wagner v. International Harvester Co.*, 611 F.2d 224, 231 (8th Cir. 1979) (applying Minnesota law) ("[T]he purchaser may be in the best position to make the cost-benefit analysis implicit in the principles of general negligence"); *Austin v. Clark Equip. Co.*, 48 F.3d 833, 837 (4th Cir. 1995) (applying Virginia law) ("[W]hen a customer exercises an option to purchase a product without a safety feature, it is axiomatic that the manufacturer should not be held liable for damages which that safety feature may have prevented," because "a manufacturer is not liable for a design defect if the product is manufactured according to the buyer's specifications . . . ."); *Morrison v. Kubota Tractor Corp.*, 891 S.W.2d 422, 428 ( Mo. Ct. App. 1994) (applying Missouri law); *Butler v. Navistar Int'l Transp. Corp.*, 809 F. Supp. 1202, 1209 (W.D. Va. 1991) (holding under Virginia law that "[w]hen a customer exercises an option to purchase a product without a safety feature, it is axiomatic that the manufacturer should not be held liable for damages which that safety feature may have prevented.") (footnote omitted)); *Davis v. Caterpillar Tractor Co.*, 719 P.2d 324, 327 (Colo. Ct. App. 1985) (holding under Colorado law that tractor without ROPS was not "unreasonably dangerous" or defectively designed "[b]ecause plaintiff, as a reasonable consumer, deliberately chose to purchase his tractor without an overhead protective structure, he should have expected that the tractor he purchased was not as safe as it would be with one."); *Beron v. Kramer–Trenton Co.*, 402 F. Supp. 1268,  (E.D. Pa. 1975), aff'd, 538 F.2d 318 (3d Cir. 1976) (applying Pennsylvania law). *Cf. Scallan v. Duriron Co., Inc.*, 11 F.3d 1249 (5th Cir. 1994) (applying Louisiana law) (automatic sensing annunciator on pump). Indeed, in my decision in *Nationwide Agribusiness Ins. Co. v. SMA Elevator Const. Inc.*, 816 F.

Supp.2d 631, 661 (N.D. Iowa 2011), a case where a company, Baldor, being sued for a component it supplied for the construction of an elevator moved for summary judgment on the ground that it had offered to sell the purchaser options for the part that would have made it safer, I pointed out:

> The "critical fact" here is that Baldor offered the precise options that Nationwide now contends would have made the bearing assembly safer, and it is uncontradicted that Schlagel did not purchase those options for its elevator leg. I am persuaded that Baldor fulfilled its duty to provide the arguably safer product by offering the end cap, E-tect seal, pre-drilled bearings, coated bearings, and "expansion" bearings as options. Nationwide has not cited, and I have not found, authority for the proposition that a manufacturer is liable for failure to incorporate into the "design" of a multi-purpose product certain safety devices that it provides as separate, optional products, for particular uses, but a purchaser rejects.

*Id*. (citations omitted).

I conclude that issues of contested fact exist about whether Robertson followed his standard practice of discussing the availability and safety features of a ROPS with Tim, offered to sell Tim a ROPS, and reviewed an Equipment Safety Check form with Tim and had him sign it.[7] Nevertheless, the record is clear that Tim was aware of the availability and safety benefits of a ROPS immediately after he purchased his 152Z mower. Ariens made substantial efforts to make purchasers of its 152Z mowers aware of the availability and potential safety benefits of a ROPS. The owner's manual provided

---

[7] Robertson, the salesman who handled the sale to Tim, couldn't recall the specific details of their conversation. Although Robertson states that he has no reason to believe he deviated from his standard practice in his sale of the 152Z mower to Tim, the question of whether or not Robertson followed his standard sales practice with Tim is for the finder of fact.

to Tim at the time of sale clearly recommended the use of a ROPS in certain situations. When Tim bought the 152Z mower, ROPS kits were available for sale to used mower owners and purchasers. Moreover, before allowing his son to operate the 152Z mower, Tim spent over an hour reviewing the owner's manual with him. This thorough review would have alerted Tim to both the availability and safety benefits of a ROPS.

"In cases such as this, it is the purchaser who best can make the decision [to buy optional safety equipment] and he should bear the loss which results from his failure to do so." *Biss*, 409 N.Y.S.2d at 877. Because Ariens fulfilled any duty it might have had to Tim by offering a ROPS as optional equipment on the 152Z mower, Ariens's motion for summary judgment is granted on this claim.

### III. CONCLUSION

Accordingly, for the reasons discussed above, Ariens's motion for summary judgment is granted on all claims. Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 30th day of June, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA